PEOPLE ex rel. SCHELPP v. KNOX et al.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

MUNICIPAL CORPORATIONS—POLICE DEPARTMENT—PROMOTION OF OFFICERS.

    The right to be promoted for gallantry in service belonged to policemen in the cities of New York and Brooklyn before their consolidation. Greater New York Charter, § 274, transferred to the police department of the new city all powers vested in the former police authorities of the

two cities. Sections 288 and 304 provide that promotions "shall be made on the basis of seniority, of merit and excellence as shown by competitive examination." Section 125, prescribing the authority of civil service commissioners, forbids them to exercise it so as to take from policemen any rights now conferred by law or by the act; and Laws 1899, c. 370, § 10, providing for the classification of city service, declares that the authority thereby conferred on the civil service commission shall not be so exercised as to take from policemen any existing rights. *Held*, that policemen may be lawfully promoted, not as the result of competitive examination, but for gallantry while in the discharge of duty.

Appeal from special term, Kings county.

Application by the people, on the relation of John E. Schelpp, against Charles H. Knox and others, constituting the municipal civil service commission of the city of New York, for a writ of mandamus to compel defendants to certify upon relator's pay roll that he had been lawfully promoted on the police force. From an order granting the writ, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William J. Carr, for appellants.

Joseph A. Burr, for respondent.

WILLARD BARTLETT, J. This case presents the question whether the board of police of the city of New York may lawfully promote a member of the police force from the position of patrolman to that of roundsman, not as the result of a competitive examination, but in recognition of his gallantry in saving life at a fire while in the discharge of his duty as a police officer. We think that this question must be answered in the affirmative. There is no dispute as to the facts of the case. Before consolidation, the relator was a patrolman on the police force of the city of Brooklyn. By virtue of the operation of the provisions of the Greater New York charter (Laws 1897, c. 378) he became a member of the police force of the new city of New York on the 1st day of January, 1898. While serving as a patrolman thereon, in the discharge of his duties at a fire in the borough of Brooklyn, at the risk of his own life he rescued from a burning building six persons, whose lives would have been lost if it had not been for the relator's efforts. In recognition of his gallantry on this occasion, the board of police, on June 1, 1899, adopted a resolution awarding him a medal for meritorious and courageous conduct, and on the recommendation of the chief of police, and with the knowledge, consent, and approval of the mayor of the city, voted that the relator should be promoted from the position of patrolman to that of roundsman on the police force. Chapter 370 of the Laws of 1899, relating to the civil service of the state of New York, which has come to be commonly known as the "White Act," makes it unlawful for the comptroller to pay any salary or compensation to any officer, clerk, or other person in the classified service of the city unless a pay roll containing the names of the persons to be paid shall bear the certificate of the municipal civil service commission of the city that the persons named in such pay roll have been appointed, or employed, or promoted in pursuance of law and of the rules made in pursuance of

law. Section 19 of statute cited. The appellants, who constitute the municipal civil service commission of the city of New York, refused to place upon the pay roll on which the relator's name appears as roundsman the required certificate showing that he had been promoted in pursuance of law, whereupon the relator instituted the present mandamus proceeding to compel the issuance of such certificate. In order to obtain a complete and correct view of the law relating to the promotion of policemen for gallant conduct in the discharge of their duties, we must ascertain what were the statutory regulations upon the subject in New York and Brooklyn before their present union was effected by the enactment of the Greater New York charter. The New York City consolidation act provided that the promotion of officers and members of the police force should be made by the board of police "only on grounds of meritorious police service and superior capacity." Laws 1882, c. 410, § 271. This clearly permitted the board to promote a patrolman for such conduct as that which led to the promotion of the relator in the case at bar. The charter of the former city of Brooklyn as it existed when consolidation took effect contained a section specially and expressly regulating promotions in the police force for gallant conduct. Laws 1893, c. 580, adding section 66 to title 11 of Laws 1888, c. 583. This section provided that, when the commissioner of police and excise was of opinion that a member of the police force deserved promotion on account of any gallant or meritorious deed in the discharge of his duty, the commissioner might recommend the said promotion to the mayor, transmitting with his recommendation a written statement of the deed upon which the recommendation was based, together with the complete record of the policeman recommended for promotion. The mayor was authorized to approve the application, if satisfied, upon examination, that the deed was one of exceptional gallantry and bravery, and upon his approval the commissioner was authorized to make such promotion as might be approved by the mayor.

From this statement it is plain that when the cities of New York and Brooklyn came together to form the Greater New York, the police authorities in each city were authorized to promote policemen for gallant conduct. We must next inquire whether this power was taken away by the legislation whereby consolidation was effected. This legislation is to be found in the Greater New York charter. Section 274 of that statute transferred to the police department of the new city all the rights, powers, authority, duties, and obligations vested in the pre-existing board of police of the former city of New York and in the commissioner of police and excise of the former city of Brooklyn. We see no escape from the conclusion that this transfer included the power possessed by the police department in each city to promote patrolmen for gallantry, unless that power was taken away by some other provision in the Greater New York charter itself. An examination, however, of the only other provisions which seem to have any application to the question under consideration shows that it was not thus taken away. Promotions in the police force are expressly regulated by sections 288, 304. Section 288 provides that promotions of officers and members of the police force

shall be made by the police board, "as provided in section three hundred and four of this act, on grounds of seniority, meritorious police service and superior capacity." Section 304 directs the municipal civil service commissioners to prescribe such regulations for the admission of persons into the police force as may best promote the efficiency thereof, and declares that the regulations so to be prescribed shall, among other things, be in furtherance of five provisions, which are set out in the section. The only one of these material to be considered here is the fourth, which reads as follows: "Promotions from the lower grades to the higher grades shall be on the basis of seniority, of merit and of excellence, as shown by competitive examination." If these provisions of sections 288, 304, stood alone, they would go very far towards sustaining the contention of the appellants that there could now be no promotion whatever in the police department except as the result of a competitive examination. They do not stand alone, however, but are most materially qualified by section 125 of the charter, which prescribes the authority and duty of the municipal civil service commissioners. Their authority is thereby expressly limited and restricted, and they are forbidden to exercise it so as "to take from any policeman or fireman any right or benefit now conferred by law or by this act, or existing under any lawful regulation of the department in which he serves." If any effect at all is to be given to this statutory limitation, it must apply to a case of promotion for gallant conduct in the police service. The right or privilege to be thus promoted upon proper occasion belonged to members of the police forces in Brooklyn and New York before consolidation. The provision was not required to protect them from removal except upon charges, or after investigation, because such protection was afforded by another section of the charter. Section 300. Nor can the provision be regarded as relating in any manner to appointments on the police force or in the fire department, because it refers to the rights or benefits conferred by law upon persons who have already become policemen or firemen. It is, therefore, very difficult, as suggested by the learned counsel for the respondent, to give the limitation in section 125 of the charter any effect at all, unless it be held to preserve the privileges which a member of the police force enjoyed before consolidation in reference to promotion.

If the views thus far expressed be correct, there is nothing in the Greater New York charter which forbids the promotion of the relator in the manner in which he has been promoted. Subsequent civil service legislation has not altered the effect of the charter in this respect. In the so-called "White Act" the section which provides for the establishment of a classified city service through the agency of a municipal civil service commission expressly declares that the authority conferred by that section "shall not be so exercised as to take from any policeman or fireman any right or benefit conferred by law or existing under any lawful regulation of the department in which he serves." Laws 1899, c. 370, § 10. This is substantially the same language as that of the limitation in section 125 of the Greater New York charter. There can be little doubt that its purpose was the same, and that it is to be regarded as a legislative reaffirmance

of the policy in reference to promotions embodied in the charter limitation. This construction of the various statutes bearing upon the question involved in the present appeal is in strict accordance with the civil service article of the constitution, which recognizes that there are some cases in which it is not possible to ascertain merit and fitness for office or official position by examinations, competitive or otherwise. No examination can be devised which will present the conditions to furnish a test of the comparative gallantry or heroism of policemen or firemen engaged in the attempt to rescue persons from a burning building. It would be most unfortunate for the public service, however, if the constitution and laws of the state forbade the recognition of exceptionally brave conduct under such circumstances by awarding deserved promotion to those by whom such conduct had been displayed. The order of the special term should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.