PEOPLE ex rel. GRADY v. KNOX et al.

(Supreme Court, Appellate Division, First Department. November 9, 1900.)

MUNICIPAL CORPORATIONS—POLICE—CIVIL SERVICE—PROMOTION—EXAMINATION —MANDAMUS.

    The New York city consolidation act (chapter 410, Laws 1882) provided that promotions of officers of the police force should be made by the board of police on grounds of meritorious service. Laws 1884, c. 410, § 8, declared that the mayors of cities should formulate regulations for admission to the civil service of each city, which should conform to the regulations prescribed for the state civil service by Laws 1883, c. 354, which required promotions to be on the basis of merit and competition; and section 8 provided that the authority conferred by it should not be so exercised as to take from any policeman any right or benefit conferred by law. The Greater New York charter (chapter 378, Laws 1897) vested the power to make regulations for promotion in the police force in the city's civil service commissioners, and section 304 declares that the regulations shall make promotion on the basis of merit as shown by competitive examination. *Held*, that where a policeman was appointed in 1886 he was not entitled to promotion by the police board, without examination under section 304, on the ground of meritorious service, by virtue of the consolidation act, since at the time he joined the force promotion was on the basis of competition, under the act of 1884, and the withdrawal of the power to make rules for promotion from the police commissioners, and

vesting it in the civil service commissioners, did not deprive him of any benefit conferred by law, in violation of Laws 1884, c. 410.

O'Brien, J., dissenting.

Appeal from special term, New York county.

Mandamus by the people, on relation of Dennis Grady, against Charles H. Knox and others, as civil service commissioners of the city of New York, to compel respondents to certify relator's promotion to roundsman. From a judgment granting a peremptory writ, respondents appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Theodore Connoly, for appellants.

Abram I. Elkus, for respondent.

INGRAHAM, J. The relator applied for, and was granted by the court below, a peremptory writ of mandamus requiring the defendants, as commissioners constituting the municipal civil service commission of the city of New York, to certify upon the pay roll of the relator that he had been promoted from the position of roundsman to that of a police sergeant on the police force of the city of New York in pursuance of law, and of the rules made in pursuance of law. It appeared by the affidavit upon which this writ was granted that the relator was duly appointed a member of the police force of the department of police of the then city of New York as patrolman on April 14, 1886, and occupied that position until the 22d day of April, 1892, when he was made a detective sergeant; that he continued in the performance of his duty as detective sergeant until July 20, 1895, when he was transferred to the Twenty-Seventh precinct; that on June 7, 1896, he was appointed to the position of roundsman of the said police department, and that on May 8, 1900, the board of police of the city of New York duly promoted the relator from the position of roundsman to that of sergeant because of meritorious and heroic conduct in the performance of his duties as roundsman. This promotion was without a competitive examination, as required by subdivision 4 of section 304 of the charter of the city of New York. The question presented is whether the board of police had the power to promote an officer from a lower to a higher grade in the department without a competitive examination. At the time the relator was appointed to the police force, appointments and promotions were governed by the New York City consolidation act (chapter 410, Laws 1882). By section 271 of that act it was provided that the promotion of officers of the police force should be made by the board of police "only on grounds of meritorious police service and superior capacity." In 1883 there was passed the original civil service act of the state of New York (chapter 354, Laws 1883). By section 1 of the act provision is made for the appointment of the state civil service commission, and by subdivision 2 of section 2 it is provided that the rules to be established by the commissioners shall provide and declare that "promotions from the lower grade to the higher shall be on the basis of merit and competition." By chapter 410 of the Laws of 1884

section 8 of this act was amended, and provision was made for the formulation of regulations for the admission of persons into the civil service in each city of the state by the mayor of such city, but the regulation so to be prescribed must, among other things, provide and declare as is provided in subdivision 2 of section 2 of the act with reference to the regulation for admission to the civil service of the state, thus expressly providing that the regulations to be prescribed shall provide for promotion from the lower grade to the higher "on the basis of merit and competition." The section further provides that "after the termination of three months from the passage of this act no officer or clerk shall be appointed, and no person shall be admitted to or be promoted in either of the said classes now existing, or that may be arranged hereunder pursuant to said rules, until he has passed the examination, or is shown to be exempted from such examination, in conformity with such regulations." It further provides: "But the authority by this section conferred shall not be so exercised as to take from any policeman or fireman any right or benefit now conferred by law or by this act, or existing under any lawful regulation of the department in which he serves." And it is upon this latter clause, which has been continued in force by various enactments, and was finally included in the charter of the Greater New York (section 125), that the relator relies. After the passage of this act, and while its provisions as to the appointment of public officers within the city of New York were in force, this relator was appointed a member of the police force. By that appointment he certainly acquired no right to be promoted in the force, except in accordance with the provisions of law then in force. By the consolidation act (section 271), before cited, it is provided that "promotions of officers and members of the police force shall be made by the board of police on grounds of seniority, meritorious police service, and superior capacity"; and by the civil service act of 1884 it was declared that the rules to be formulated regulating the promotion of police officers should provide that promotions from the lower grade to the higher should be "on the basis of merit and competition." Under these provisions it seems clear that each member of the police force thereafter appointed acquired the right to apply for promotion under the provisions of law as it then existed, and had the right, if the result of that competitive examination provided for by this act demonstrated his fitness for the office, to be promoted, and it was the right that the relator acquired upon his appointment to the police force; but it was this right also that was vested in each of the other members of the force. By chapter 569 of the Laws of 1895, section 265 of the consolidation act was amended, and provision was made for the promotion of officers of the force, and for the appointment of a board by the police commissioners to determine the officers to be promoted. The police commissioners were to make regulations which were to provide for promotion from the lower grades to the higher, and it was provided that such promotions should be on the basis of seniority, merit, and competition, and that none of the provisions of section 8 of chapter 354 of the Laws of 1883 should apply to the police department. The provisions of section 271 of the consolidation act, which provided

that promotions of officers and members of the police force should be made by the board only on grounds of meritorious police service and superior capacity, were amended by providing that no promotion should be made except in the case of a vacancy in the office of chief of police, unless the same was recommended by the chief of police in writing, stating his reasons for such recommendation; and the consolidation act, as thus amended, was in force at the time of the enactment of the charter of the new city of New York (chapter 378, Laws 1897). By that charter the power to make rules and regulations for appointment to and promotion in the police force was taken from the police commissioners, and vested in the city civil service commissioners. By section 288 of the charter it was provided that:

"Promotions of officers and members of the police force shall be made by the police board, as provided in section three hundred and four of this act, on grounds of seniority, meritorious police service and superior capacity."

By section 304 it is provided that:

"The civil service commissioners shall prescribe such regulations for the admission of persons into the police force, and into the service of the police department, as may best promote the efficiency thereof, and ascertain the fitness of candidates in respect to character, knowledge and ability for the police force. The regulations so to be prescribed shall, among other things, be in furtherance of the following provisions: * * * Subd. 4. Promotions from the lower grades to the higher grades shall be on the basis of seniority, of merit and of excellence, as shown by competitive examination. The police board shall transmit to the civil service commission the record of each candidate for promotion."

It was the intention of the legislature by these provisions of the charter to provide a system under which all promotions of police officers should be based on seniority, merit, and excellence, and that favoritism or personal preference should, so far as possible, be excluded in considering promotions. The competitive examination was to be an examination under the rules prescribed by the civil service commissioners. The examiners were to consider the record of the police officer, as is shown by the provision that the board of police was to transmit to the civil service commissioners the record of each candidate for promotion; and this competition, which was to take place under the regulations established by the civil service commissioners, was thus to include the police service and the meritorious acts that the officer who was an applicant for promotion had rendered in the performance of his duty, as well as such examination as the rules should prescribe as to his fitness for the position to which he sought to be promoted. The clear intent of the legislature was to take away from the commissioners of police, or their appointees, the right to conduct this competitive examination, and to determine which of the officers that had applied for promotion was entitled thereto. In all the provisions in relation to the appointment and promotion of police officers which were in force prior to the passage of the new charter, appointment to the police force and promotion in the force were to be made by the commissioners. By the consolidation act, before the passage of the civil service act, the determination as to the officers to be promoted was to be based upon meritorious

police service and superior capacity, but the meritorious service and superior capacity were then to be determined by the individual judgment of the commissioners. When the civil service act was made applicable to the police department of the city of New York, the power of the commissioners to select without restriction those officers to be promoted was limited so that thereafter the rules for the enforcement of the civil service act should provide that these promotions should be upon the basis of merit and competition; thus introducing a new element by which a promotion upon the force was to be determined by a competition among those who made application therefor. And all through the various acts in relation to the appointment and promotion in the police department passed since that time this principle has been kept in view, restricting the power of the police commissioners as to promotion of police officers, and providing that the fitness of the applicant should be ascertained by an independent officer, and not by the police commissioners, until we have in the charter the final provision which has been made, whereby this promotion is to be the result of a competition in which the police record of the officer applying for promotion is to be considered; but this competition is now to be conducted, not by the police commissioners, but by the civil service commission, and the officer selected for promotion to be determined by them. Certainly, this change, by which the right to a promotion was taken from the discretion of the police commissioners and given to the civil service commissioners, to be determined by them as the result of a competition among all of the officers of the grade from which the promotion was to be made who applied for promotion, did not take away from any police officer any right or benefit then conferred upon him by law or by any lawful regulation of the department in which he served. Transferring from one public officer to another the right to determine his meritorious police service or fitness for a higher office did not take away or change his right to promotion. The only change has been in the method of ascertaining the superiority of applicants for promotion, and this change, by which special officers are designated as the ones who are to conduct the competition by which such superiority can be ascertained, would seem to make that right much more secure. But, as before stated, when this relator was appointed to the police force the law of this state provided that promotion should be ascertained on the basis of merit and contention, and this provision of the charter to which attention has been called is simply giving effect to the provision of law that was in force at the time of his appointment on the force, and when he acquired whatever right he had to promotion. I have thus examined this question without reference to the case to which our attention has been called (People v. Knox, 48 App. Div. 477, 62 N. Y. Supp. 940). That case arose under the provisions of law in relation to the city of Brooklyn prior to the adoption of the new charter of the city of New York. There an entirely different provision in the charter of the city of Brooklyn had to be construed, and one which undoubtedly conferred upon the policemen who were members of the Brooklyn police force an entirely different right than was conferred by the consolidation of New York upon the members

of the police force when the relator was appointed. The attention of the court was not called to the provisions of the civil service act relating to the old city of New York, which are now before us; and while I should, without hesitation, follow that decision if it involved the question here under consideration, it seems to me that an entirely different question is now presented, and for the reasons before stated I am satisfied that the rule there enunciated has no application to officers appointed to the New York police force, and that the relator is not entitled to be promoted, except after the competitive examination provided for by the charter. The order must, therefore, be reversed, and the motion for mandamus denied, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

HATCH, J. (concurring). The case of People ex rel. Schelpp v. Knox, 48 App. Div. 477, 62 N. Y. Supp. 940, which arose in the Second department, did not involve the construction of the consolidation act nor the Greater New York charter, except so far as necessary to determine how far its provisions affected the rights of one who became a member of the police force of the city of Brooklyn before consolidation took place. Therefore what is said in the opinion as to the consolidation act, to the effect that the promotion of members of the police force should be made only on grounds of "meritorious police service and superior capacity," and that this clearly permitted the promotion of a patrolman for such conduct as that which led to the promotion of the relator in that case, is obiter. The question how promotions might be made outside the borough of Brooklyn, and of others than such as had become members before the consolidation, it was not necessary there to decide, nor was it decided. It is apparent that whether an officer was entitled to promotion "on account of any gallant or meritorious deed in the discharge of his duty," under the Brooklyn charter, could not be determined by competitive examination. But under the provisions of the statutes and civil service rules applicable to this case, which require the transmission to the civil service commission of the record of each candidate for promotion, all questions of "seniority, meritorious police service, and superior capacity" may be determined by the commissioners; and this includes heroic conduct with the other matters. What the court really determined in the Schelpp Case was that the relator, by reason of the statutes in force when he became a member of the police force, acquired a vested right to be promoted for gallant conduct, which had not been attempted to be taken away. Such a case is not now before us. I therefore concur in the opinion of Mr. Justice INGRAHAM.

O'BRIEN, J. I dissent upon the authority of People v. Knox, 48 App. Div. 479, 62 N. Y. Supp. 940, for the reasons therein given. It is true the question there arose as to the right of the police commissioners in the late city of Brooklyn to promote patrolmen for gallantry; but the court in that case examined and discussed the question from the standpoint of the power possessed by the police authorities of the former cities of New York and Brooklyn, and in that

connection, as said in the opinion, "it is plain that, when the cities of New York and Brooklyn came together to form the Greater New York, the police authorities in each city were authorized to promote policemen for gallant conduct." This was the conclusion reached after an examination of the provisions of the civil service law, the consolidation act of New York City, and the provisions of the Greater New York charter, and I think it should be followed, and therefore am for affirmance, with costs.