(57 App. Div. 155.)

PEOPLE ex rel. COLBERT v. KNOX et al.

(Supreme Court, Appellate Division, Second Department. January 25, 1901.)

MUNICIPAL CORPORATIONS—SALARY OF POLICEMEN—PROMOTION—CIVIL SERVICE COMMISSION—MANDAMUS.

> Greater New York Charter, §§ 288, 304, authorize the police board to make promotions in the police force on grounds of merit, as shown by competitive examinations. Laws 1899, c. 370, §§ 7, 12, 15, require competitive examinations in all cases of promotion in the civil service. Section 19 prohibits the disbursing officer of a city from paying any salaries to city employés unless the municipal civil service commission shall certify that the person named has been employed or promoted in pursuance of law. *Held*, that a patrolman, who has been temporarily serving as roundsman by the direction of the chief of police, and whose name is placed on the pay roll, which is transmitted to the board of civil service commissioners, as a roundsman, cannot maintain mandamus to compel such board to certify that he has been appointed or promoted in pursuance of law, since such temporary appointment was not a promotion entitling him to the increased salary.

Appeal from special term, Kings county.

Mandamus by the people, on the relation of Matthew J. Colbert, against Charles Knox and others, constituting the municipal civil service commission of the city of New York. From an order denying the writ, relator appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Joseph A. Burr, for appellant.

William J. Carr (Luke D. Stapleton, on the brief), for respondents.

GOODRICH, P. J. Colbert, the relator, who for many years had been a patrolman on the police force of the city of New York, on June 6, 1899, was assigned to duty as a roundsman by the chief of police. He fulfilled the duties of that position till the time of the commencement of this proceeding. The salary of a patrolman, under the Greater New York charter, is $1,400 per annum, and that of a roundsman $1,500. The police department placed the relator's name on the pay roll with the larger salary, and transmitted the same to the municipal civil service commission, for certification that Colbert "had been appointed or employed or promoted in pursuance of law, and of the rules made in pursuance of law." The commissioners refused thus to certify, and the relator moved for a peremptory writ of mandamus requiring the commissioners to do so. The court denied the motion, and the relator appeals.

In Brooklyn roundsmen were enumerated in the composition of the police force in the charter of that city (Laws 1888, c. 583, tit. 11, §§ 4, 6), and so became permanent statutory officers. Since the adoption of the original civil service law they have been classified in the regulations as subject to competitive examination, so that no patrolman was eligible to appointment to the higher grade of roundsman without such examination. Prior to the Greater New York charter there was no specified statutory office of roundsman in the old city of New York, although there were several statutes which in terms referred to patrolmen designated or detailed as roundsmen, as, for instance, Laws 1889, c. 188, § 1; Laws 1894, c. 741, § 2. It was held in 1896, in People v. Roosevelt, 5 App. Div. 168, 39 N. Y. Supp. 78, that there was no such rank as that of roundsman in that city, separate and distinct from the position of patrolman, recognized by law. The first appearance of the office of roundsman in the city of New York which I can discover in the statutes was in section 276 of the Greater New York charter. In section 299 the salary of roundsman was made $1,500, and the salary of patrolman $1,400. Under the Greater New York charter the office of roundsman has a permanent tenure and a statutory salary, and as a consequence there is a termination of a patrolman's office as patrolman when he becomes a roundsman. It is evident that this constitutes a promotion, both technically and actually. Section 288 provides that "promotions of officers and members of the force shall be made by the police board, as specified in section 304 of this act, on grounds of seniority, meritorious police service and superior capacity." Section 304 provides for civil service examination, for the arrangement of the police force in classes, the filling of all offices by "selection from among those graded highest as the result of said competitive examination," and that "promotion from the lower grades to the higher shall be made on the basis of seniority of merit and of excellence as shown by competitive examination," and requires the transmission by the police board to the civil service commission of the record of each candidate for promotion. This constitutes a plain and unambiguous declara--

tion that patrolman and roundsman hold separate grades of office, and that promotion from one grade to the other shall be the result of competitive examination under the civil service law. The White law (chapter 370, Laws 1899) also redeclared the necessity for such competitive examination in all cases of promotion. See sections 7, 12, 15. It is conceded in the brief of the relator that his assignment to duty as roundsman was a temporary one. Then he seems to be impaled on the horns of a dilemma, either of which is fatal to his contention. If his assignment was temporary, it did not constitute a promotion to the office of roundsman, and thus carry with it the right to increased salary; and, on the other hand, if it was a promotion, it was contrary to the civil service statute of 1899, which took effect two months before the relator's appointment by the chief of police. Any other decision would open the door to an evasion of the civil service law. The decision of this court in People v. Knox, 48 App. Div. 477, 62 N. Y. Supp. 940, is not inconsistent with this opinion. We held that the police board might promote an officer for gallant conduct in the police service, in saving, at the risk of his life, six persons from a burning building, for the reason that "no examination can be devised which will present the conditions to furnish a test of the comparative gallantry or heroism of policemen or firemen engaged in the attempt to rescue persons from a burning building."

From these facts, it follows that the defendants cannot certify by authority of law that the relator was appointed or employed or promoted in pursuance of law, and of the rules made in pursuance of law, as required by section 19 of the act. For these reasons, the order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.