THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN P. LEARY, Appellant, v. CHARLES H. KNOX et al., as Commissioners Constituting the Municipal Civil Service Commission of the City of New York, Respondents.

1. NEW YORK POLICE FORCE — PROMOTION FOR HEROISM UNAFFECTED BY CIVIL SERVICE LEGISLATION. The power which was conferred upon the police board of the former city of New York to promote, with the approval of the mayor, a member of the police force of that city for special and particular acts of heroism, and his right to receive such promotion, still exists unaffected by any constitutional or statutory provisions regulating appointments and promotions in the civil service and providing for a competitive examination "when practicable." The general civil service statutes would have no application to such promotion even if they contained no provision excepting it from their operation since they were not intended to affect or modify a local statute authorizing it.

2. RIGHT TO PROMOTION FOR GALLANTRY WITHOUT CIVIL SERVICE EXAMINATION. The civil service statutes, however, and the Greater New York Charter itself, contain exceptions which preserve the right of a member of the police force appointed before that charter took effect, to promotion for a particular act of gallantry performed thereafter, by providing that the authority conferred thereby shall not be so exercised as to take from any policeman or fireman any right or benefit conferred by law or existing under any lawful regulations of the department in which he serves, and such language not only is broad enough to embrace rights or benefits not then in possession or enjoyment but in expectancy under any law which entitled him to special honors or rewards for some particular meritorious act while in the service, and he is therefore properly promoted without passing a civil service examination.

*People ex rel. Leary* v. *Knox*, 54 App. Div. 634, reversed.

(Argued February 27, 1901; decided April 16, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, made November 9, 1900, which reversed an order of Special Term granting a peremptory writ of mandamus requiring the defendants to certify upon the payroll of the relator that he was promoted to the position of roundsman of the police force of the city of New York and entitled to pay as such.

The facts, so far as material, are stated in the opinion.

*Abram I. Elkus* for appellant. Relator's appointment without civil service examination was proper. (L. 1882, ch. 410; L. 1883, ch. 354; L. 1884, ch. 410; L. 1894, ch. 354; L. 1895, ch. 569; *People ex rel.* v. *Knox,* 48 App. Div. 477.) Subsequent legislation fully protected the relator's rights to be promoted from the position of patrolman to that of roundsman for heroic and meritorious service, without a competitive examination. (L. 1897, ch. 378, § 274; *People ex rel.* v. *Roosevelt,* 5 App. Div. 168; *People ex rel.* v. *Knox,* 48 App. Div. 477.)

*John Whalen, Corporation Counsel (James M. Ward, Theodore Connoly* and *Terence Farley* of counsel), for respondents. A consideration of the legislation affecting the police department in New York city before consolidation, and the various civil service statutes of this state, will demonstrate that no promotion could be made for heroic conduct without an examination. (*People ex rel.* v. *Roberts,* 148 N. Y. 360; *Matter of Sweeley,* 12 Misc. Rep. 174; *Chittenden* v. *Wurster,* 152 N. Y. 345; *People ex rel.* v. *Lyman,* 157 N. Y. 368.) The civil service legislation, since the passage of the Greater New York charter, is a legislative reaffirmance of the policy of the state not to permit promotions in the police department of New York city unless after a competitive examination. (L. 1897, ch. 428; L. 1898, ch. 186; L. 1899, ch. 370.)

O'BRIEN, J. The relator, on the twenty-first day of January, 1897, was appointed a patrolman on the police force of the city of New York, and after the new charter went into effect, on the first day of January, 1898, he continued to serve in that position as a member of the police force of the present city. On the first day of June, 1900, the police board, by a resolution duly passed and approved by the mayor, promoted him from the position of patrolman to that of roundsman because of meritorious and heroic conduct in the performance of his duties as such patrolman. The heroic or meritorious act for which this promotion was made was exhibited on the

occasion of the fire which destroyed the Windsor Hotel on the seventeenth of March, 1899. It appears from the moving papers that on that occasion he went to the second floor of the burning building and rescued four women who were imprisoned in the fire escape; going up to the fifth story he met a man with his clothes on fire and extinguished it and then passed the man down the ladder to the street. Next he found a woman on the fifth floor of the hotel helpless and badly burned, and with the assistance of a brother officer he placed her upon his back and at the risk of his life carried her to the second floor and then down a burning staircase in safety to the street.

It may be assumed that the determination of the police board, promoting the relator by reason of this meritorious and heroic conduct in the performance of his duty, is a promotion from a lower to a higher grade in the police force, at least in the sense that the relator became entitled, if the promotion was legally made, to a larger salary. It appears from the moving papers that the treasurer of the police department refuses to pay the relator the salary of roundsman without a certification by the respondents as commissioners constituting the municipal civil service commission of the city of New York on the ground that such a certificate is required by section nineteen of chapter three hundred and seventy of the Laws of eighteen hundred and ninety-nine. The court at Special Term upon the relator's application granted a peremptory writ of mandamus commanding the respondents to forthwith certify upon the payroll of the relator that he was promoted to the position of roundsman according to law and the rules made in pursuance of law, and was entitled to pay as a roundsman from the first day of June, when promoted, at the rate of fifteen hundred dollars per annum. The Appellate Division, by a divided court, reversed the order, and from that decision this appeal has been taken.

The question in the case involves the construction of various statutes existing prior to the enactment of the new charter, some of the provisions of the charter itself and at least one

general statute subsequently enacted. It is quite possible that a very strict construction of these numerous statutes would justify the decision of the court below. But we think that the system of statute law upon which the relator's rights depend should not be subject to any narrow or illiberal construction. The various statutes should receive a fair construction, and the intention of the legislature when ascertained should, of course, control. It is clear beyond dispute that at the time the relator entered the service as a policeman, and for many years before, the police board possessed and exercised the power of promoting individual policemen for special and exceptional acts of heroism in preserving human life. The board attempted to exercise that power in this case upon a state of facts as to which there is no dispute and leaves no doubt as to the character and merit of the service which the relator performed. The policy of the statute in conferring power upon the police board to promote a member of the force for special and particular acts of heroism was to furnish inducements for the performance of duty even when confronted with great personal danger. The possibility of obtaining such rewards and honors was held out to every individual entering the service as a means of promoting its efficiency. It is analogous in some sense to the inducements which the government furnishes to the soldier who, in the discharge of his duty, is distinguished for bravery or some particular heroic act. When a policeman or a soldier has by his conduct earned the promotion or the reward, he ought not to be deprived of the benefits by any narrow or literal construction of the law governing the case. There is at least one important point involved in the controversy that is clear beyond any dispute, and that is that formerly the police board, with the approval of the mayor, was clothed with the power to do all that it has done in this case ; that is, to determine that the relator merited promotion by reason of his conduct on the occasion referred to and to award the promotion.

The only other question involved is, whether this power has been abolished or modified in such a way that the police board

448            People ex rel. Leary v. Knox.            [April,

Opinion of the Court, per O'Brien, J.            [Vol. 166.

is disabled from acting except in conjunction with the municipal civil service commission, or has the power which it formerly exercised been taken away or divided between the board, the mayor and the civil service commission? If it has, then it was necessary that the relator, in order to obtain the promotion and the increase in his salary, should have satisfied, not only the police board and the mayor, but also the civil service commission, that he was entitled to the promotion. But a special and local statute conferring power upon the police board to promote a policeman for particular and exceptional acts of gallantry is not to be deemed repealed or modified by a subsequent general law relating to the civil service generally. The various statutes with respect to promotions in the civil service are no broader than the Constitution itself. That enacts that appointments and promotions in the civil service shall be made when practicable upon competitive examination. The fact is clearly recognized that in some cases where promotion is merited a competitive examination would be impracticable; and it is very evident that this is such a case, since it is obvious that no examination could be devised which would present the conditions to furnish a test of the comparative heroism of a policeman engaged in the attempt to rescue persons from a burning building. In this case the right to promotion depended upon some meritorious or heroic act. That act alone is the only test which is practicable to apply to the relator's right to promotion. It may be that in such cases the applicant would not be able to meet any educational test whatever, but that circumstance ought not to interfere with the right of promotion which the law held out to him at the time that he entered the service as a reward for acts of exceptional courage or bravery in the performance of duty. We do not think that either the Constitution or the various statutes regulating appointments and promotions in the civil service has any application to this case. The general legislation on that subject was not intended to affect or modify a statute which authorized the police board to promote the relator as a reward for his conduct on the occasion of the burning of the

hotel.   It is well settled that a special and local statute, provid-
ing for a particular case or class of cases, is not repealed or
modified by a subsequent statute, general in its terms, provis-
ions and application, unless the intent to repeal or alter is mani-
fest although the terms of the general act would, but for the
special law, include the cases provided by the latter.   (*Mat-
ter of Commissioners of Central Park*, 50 N. Y. 493;
*McKenna* v. *Edmundstone*, 91 N. Y. 231 ; *Davis* v. *Supreme
Lodge K. of H.*, 165 N. Y. 159.)   This principle would control
this case even if the subsequent statutes regulating appoint-
ments and promotions in the civil service were general and
sweeping in the language employed and contained no excep-
tions or reservations applicable here.   But in all the statutes
regulating the civil service is to be found an important excep-
tion which, it seems to me, takes this case out of their oper-
ation and leaves the law with respect to the power of the
police board to promote the relator substantially where it was
originally.   The last of these enactments is to be found in
section ten of chapter three hundred and seventy of the Laws
of eighteen hundred and ninety-nine.   That section, after
providing for the classified service in cities, contains the fol-
lowing provision :   " The authority by this section conferred
shall not be so exercised as to take from any policeman or
fireman any right or benefit conferred by law, or existing
under any lawful regulation of the department in which he
serves."   The city charter contains a provision substantially
identical.   These provisions of the general law regulating the
civil service disclose an intention on the part of the legisla-
ture to except from the general rules therein enacted just such
a case as this.   All rights or benefits conferred by law referred
to were not necessarily such rights as had vested in the indi-
vidual, but the language is broad enough to embrace rights or
benefits not then in possession or enjoyment, but in expect-
ancy under any law which entitled him to special honors or
rewards for some particular meritorious act while in the serv-
ice.   The power of the police board to make promotions for
such exceptional conduct is not at all inconsistent with the gen-

eral scope and purpose of the civil service regulations. Both enactments can stand and each can be made to perform the office which the legislature intended in enacting it. The subsequent legislation does not affect the original law conferring the power of promotion upon the police board and the mayor in such cases, since the latter statutes do not, in terms, or by any reasonable implication, interfere with that power. On the contrary, these statutes disclose an intention on the part of the legislature to make such a case as this an exception to the general rule, and, hence, it is not within the general scope or purpose of the civil service regulations. These views are confirmed by an examination of a recent case in the Supreme Court. (*People ex rel. Schelpp* v. *Knox*, 48 App. Div. 477.) In that case the various statutes relating to the question were considered, and the conclusion of the court commends itself to us as a fair and reasonable exposition of the law.

It follows that the order of the Appellate Division should be reversed, with costs, and that of the Special Term affirmed.

Landon, J. (dissenting). The question presented by this appeal is whether the relator under his appointment and service as patrolman before the charter of Greater New York took effect, and his continuance in service under that charter and until his alleged promotion from patrolman to roundsman June 1, 1900, was then eligible to such promotion by the board of police because of meritorious police service, without passing the civil service examination required by sections 208 and 304 of the charter of Greater New York, chapter 378, Laws 1897, and by chapter 370, Laws 1899, known as the White Civil Service Act. Section 208 of the present charter provides that promotions in the police force shall be made by the police board as provided in section 304 on grounds of seniority, meritorious police service and superior capacity. Section 304 provides that " promotions from the lower grades to the higher grades shall be on the basis of seniority, of merit and of excellence, as shown by competitive examination. The police board shall transmit to the civil service commission the record of each

candidate for promotion." Section 15 of the Civil Service Act of 1899 provides: "Promotions shall be based upon merit and competition and upon the superior qualifications of the person promoted as shown by his previous service, due weight being given to seniority. For the purposes of this section an increase in the salary or other compensation of any person holding an office or position within the scope of the rules in force hereunder beyond the limit fixed for the grade in which such office or position is classified, shall be deemed a promotion. No promotion, transfer or reinstatement shall be made from a position in one class to a position in another class unless the same be specially authorized by the state or municipal commission."

The relator claims exemption from examination for this promotion under section 10 of the act of 1899. This section provides for the creation of the municipal civil service commission, the making and enforcement by the commissioners of rules for the classification of offices, and for appointments and promotions therein and examinations therefor, and provides: "The authority by this section conferred shall not be so exercised as to take from any policeman or fireman any right or benefit conferred by law, or existing under any lawful regulation of the department in which he serves." Substantially the same provision is contained in the Civil Service Act of 1883, section 8, as amended by chapter 410, Laws 1884, and in subsequent acts, and in section 125 of the charter of Greater New York. But no right or benefit is conferred or exists until vested by appointment, and unless made by the appointing power, while yet in possession of the power, it can only be made by the new body to which it is transferred, and then only within the new limitations of that power. If this were not so, then as to the relator the former statutes as to the power of the police board to promote him would be irrepealable. Suppose the relator were eligible to election by popular vote to the office of roundsman, and then the law should be changed making the office appointive upon competitive examination, it could not be supposed that he had been

deprived of any existing right or benefit conferred by law. The relator had a capacity to take a right or benefit from the police board, but the board, before attempting to confer it, lost the power to do so. If he had secured promotion before a change in the law, its rights or benefits would not be impaired by the change. The provision protected his title to whatever he had acquired, and whatever he could as of his own right by virtue of that title, without a further appointment, promotion or test acquire. It did not embrace a future promotion which rested in the power and discretion of others, especially when their power was subject to be divested by law. This distinction seems to have been overlooked in *People ex rel. Schelpp* v. *Knox* (48 App. Div. 477).

It can be shown, I think, that before the White Act the assignment, detail or transfer of a patrolman to duty as a roundsman was not in legal sense a promotion, but a mere detail to particular police service. (*People ex rel. Buckley* v. *Roosevelt*, 5 App. Div. 168; Consolidation Act, section 271; Charter Greater New York, section 292.) The appellant rests his case upon promotion, not detail.

But passing this question, and assuming that before the passage of the White Act the detail or assignment of a patrolman to permanent duty as a roundsman was in legal sense a promotion, I think that the civil service laws and rules in force at the time of the relator's appointment as patrolman precluded his promotion without the test of a competitive examination. This is satisfactorily shown in the majority opinions of the learned Appellate Division in *People ex rel. Grady* v. *Knox* (54 App. Div. 334). This case was argued in the Appellate Division with that case and decided upon the opinions therein given. (*Ib.* 634.)

It should be noticed that in the *Schelpp* case the former Brooklyn charter permitted promotion "on account of any gallant or meritorious deed in the discharge of his duty." The Consolidation Act and the charter of the greater city of New York provided for promotions on grounds of "meritorious police service and superior capacity." A "gallant or meri-

1901.] People ex rel. City of N. Y. *v.* Woodruff. 453

N. Y. Rep.] Statement of case.

t.rious deed " is a personal specific act; it speaks for itself, and in its nature excludes competitive examination. "Meritorious police service" admits of competitive examination, is not specific, and opens the door to favoritism. Thus the *Schelpp* case is unlike this case. While we applaud the services of the relator, we should, nevertheless, advise him to seek his promotion through legal methods, instead of making a breach in them through which the unworthy can pass.

BARTLETT, HAIGHT and MARTIN, JJ., concur with O'BRIEN, J., for reversal. PARKER, Ch. J., and VANN, J., concur with LANDON, J.

Order reversed, etc.