Circuit Court for Queen Anne's County
Case No. 17-C-15-020318

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 855

September Term, 2016

_____

111 SCHERR LANE, LLC, ET AL.

v.

TRIANGLE GENERAL CONTRACTING,
INC., ET AL.

_____

Eyler, Deborah S.,
Beachley,
Shaw Geter,

JJ.
_____

Opinion by Eyler, Deborah S., J.
_____

Filed:  June 29, 2017

In 2013, a commercial property at 111 Scherr Lane in Grasonville ("the Property") was sold at foreclosure to 111 Scherr Lane, LLC ("the LLC"), the owner of the Property, and Edward Gills, the sole member of the LLC, the appellants. Thereafter, in the District Court of Maryland for Queen Anne's County, two actions for replevin were filed against the LLC and Gills to recover personal property stored at the Property. One action was filed by appellee TECO, Inc. ("TECO"), an electrical contracting company owned by the prior owners of the Property and their family members; and the other was filed by appellee Triangle General Contractors, Inc. ("Triangle"), a lessee of the prior owners.[1] The cases were consolidated for trial and the District Court granted writs of replevin in favor of TECO and Triangle. After the writs were executed, resulting in the recovery of some, but not all, of the appellees' property, the cases were converted to actions for detinue and transferred to the Circuit Court for Queen Anne's County.

The circuit court bifurcated the claims, which were separately tried to the court. In TECO's case, the court entered a final judgment of possession in its favor for property recovered under the writ and for certain property that had not been recovered; and entered judgment in TECO's favor for $9,856.40 for the value of other property that was not recovered. The judgment was entered against the LLC and Gills, jointly and severally. In Triangle's case, the court issued a judgment of possession in favor of Triangle for

---

[1] One suit also named Paul Cohen, a substitute trustee who foreclosed upon the deed of trust on the Property, as a defendant. Cohen has no interest in the Property, however, and is not an appellant.

property recovered under the writ and entered a judgment against the LLC for $59,119 for items not recovered.

Gills and the LLC noted this appeal, presenting five questions for review, which we have rephrased and reordered:

I.    Did the circuit court err or abuse its discretion by determining that the personal property had not been abandoned?

II.   Did the circuit court err or abuse its discretion by entering judgments for possession and money judgments in detinue for personal property that was not in the possession of Gills and the LLC when the replevin action was commenced?

III.  Did the circuit court err or abuse its discretion by awarding damages in favor of Triangle based upon the replacement value, instead of the market value, of the personal property?

IV.   Did the circuit court err or abuse its discretion by entering judgments for possession and for damages against Gills and the LLC for property that was listed as recovered on the schedule of replevied items?

V.    Did the circuit court abuse its discretion by entering judgment against Gills personally for actions he took on behalf of the LLC?

For the following reasons, we answer these questions in the negative and shall affirm the judgments of the circuit court.

## FACTS AND PROCEEDINGS

The Property consists of a fenced, commercial lot improved with a modular home. In 2004, Josiah Tice ("J. Tice") and Joan Tice, his wife, purchased the Property. They did not live on the Property, but used it to store equipment for TECO, a family-owned electrical contracting business. Dennis Jay Tice ("D. Tice"), their son, is an owner and

-2-

the general manager of TECO. TECO's equipment was stored in seven trailers parked on the Property.

In late 2006 or early 2007, J. Tice entered into a verbal lease agreement with Jack Leone on behalf of his company, Triangle. Pursuant to that agreement, Triangle began storing its contracting supplies in two trailers parked on the Property and paying $50 per month in rent to J. Tice.

On July 16, 2013, substitute trustees on an indemnity deed of trust securing the elder Tice's mortgage on the Property filed an order to docket foreclosure in the circuit court. Two months later, on September 17, 2013, the Property was sold at a foreclosure sale to Gills, for $94,000. J. Tice and D. Tice were present at the foreclosure sale, having hoped to purchase it on behalf of TECO.

Gills planned to use the Property in connection with his seafood business. After the foreclosure sale, he contacted members of the Tice family several times and asked them to remove their belongings from the Property. At that time, Gills was unaware that any of the trailers belonged to Triangle.

The foreclosure sale was ratified on December 13, 2013. On February 5, 2014, Gills went to settlement, having assigned the contract of sale to his wholly-owned LLC. A substitute trustee's deed was executed that day conveying the Property to the LLC. Thereafter, Gills padlocked the gates to the Property and posted "No Trespassing" signs.

Five days later, on February 10, 2014, Gills wrote to J. Tice as follows:

> I am writing this letter to inform you that you have 10 days to remove your stuff from [the Property]. The [P]roperty is now legally owned by my LLC. The courts [sic] ratification took place weeks ago. I have talked to

you by phone on several occasions to no avail. I need to move on with my plans for the [P]roperty. I will dispose of the stuff if you have not removed it within 10 days of the writing of this letter. To access the [P]roperty you must call [me] at [phone number] anytime. I am close and can be there in a moment.
Thank you,
Ed Gills, for [the LLC]

In the days that followed, D. Tice, along with TECO employees, went to the Property several times to remove the TECO equipment stored there. He brought with him a trailer and a skid steer.[2] According to D. Tice, two snowstorms and a rain storm made it impossible for him to remove all of TECO's personal property within the ten-day period imposed by Gills. On Friday, February 20, 2014, Gills told D. Tice that he could enter the Property a final time the following day to remove the trailer and the skid steer, but that "everything else was his [*i.e.*, Gills's] and [D. Tice] couldn't have it." On Saturday, February 21, 2014, D. Tice went to the Property. Gills was present, along with the Sheriff, and permitted D. Tice to take the two items, but nothing else. At that time, the seven TECO-owned trailers remained on the Property, as did some of their contents.

Meanwhile, Leone was still unaware that the Property had been foreclosed upon. He continued to pay $50 per month in rent. On March 12, 2014, J. Tice contacted Leone, who was in Florida, and told him that the Property had changed ownership. Leone immediately called Gills to inquire about retrieving Triangle's personal property. Gills told Leone that Triangle's trailers and the equipment inside them now belonged to him (Gills).

---

[2] A skid steer is a 4-wheel vehicle with loading arms that can be used to move heavy objects.

## A. District Court Proceedings on Replevin Actions

More than two months later, on June 2, 2014, Triangle filed an action for replevin against Gills, the LLC, and the substitute trustee in the District Court seeking return of its personal property and damages of $25,000. It alleged that two trailers—a 1986 Williams Office trailer ("Williams Trailer") and a 1988 Strick trailer ("T-44 Trailer")—belonging to Triangle were stored on the Property and that "approximately ninety (90) items or pieces of construction equipment" were stored in the trailers. Triangle attached to its complaint a four-page handwritten inventory of the contents of the T-44 Trailer.

On June 26, 2014, TECO filed an action for replevin against Gills and the LLC in the District Court seeking return of its personal property and damages of $29,500. It alleged that TECO owned "approximately 200 items of personal property . . . stored in trailers" on the Property.[3] TECO attached as an exhibit to its complaint a list of assets stored on the Property, including "7 . . . Box Trailers and their contents."

The cases were consolidated for trial on September 26, 2014. In TECO's case, J. Tice testified consistent with the above stated facts. D. Tice testified that the seven TECO trailers had been on the Property since 2006/2007. The trailers contained various electrical supplies and tools, many of which had been acquired in 1998 when TECO purchased the assets of Simpson Electrical Co., Inc. A copy of the Bill of Sale reflecting that acquisition was introduced into evidence. D. Tice had marked with asterisks the

_____

[3] J. Tice also was named as a plaintiff. The complaint alleged that J. Tice owned a 1980 Line Truck and a 1954 Antique Chevrolet Truck that were stored on the Property. No evidence about these items was produced at the replevin hearing or in the subsequent detinue action in the circuit court and J. Tice is not an appellee in this Court.

items on the list that he knew were on the Property as of February 20, 2014. Those items included the seven trailers, a forklift, and various tools. He also testified that a "sea container" was on the Property.[4]

D. Tice explained that when the foreclosure proceedings were commenced, he and his father still hoped that the family and/or TECO would be able to maintain title. They attended the foreclosure sale, but were outbid by Gills. Thereafter, they did not remove TECO's trailers from the Property because they understood that the sale was not yet finalized. They also believed they might be able to enter into an agreement with Gills to continue storing the trailers on the Property.

After receiving the February 10, 2014 letter from Gills, however, D. Tice took steps to remove TECO's property from the Property. He brought machinery onto the Property to remove some of the items. During the 10-day period, there were two snowstorms and a rainstorm, however, and as a result, he was unable to move very many items. He was "scheduled" to go to the Property on Friday, February 20, 2014, to "get some more stuff," but Gills prohibited him from doing so. The following day, Gills permitted D. Tice to enter the Property to remove a "two axle trailer, skid steer, [and] a van that we had loaded, and the truck that we had towed it in there with." He was not permitted to load any additional items.

In Triangle's case, Leone testified that Triangle had stored two trailers on the Property since 2007: the Williams Trailer, which was 8 feet by 32 feet, and the T-44,

---

[4] A "sea container" is a "metal box with doors on it" that is used "to ship cargo back and forth . . . on a ship." It also can be used to store equipment on job sites.

which was a 40-foot box trailer. The T-44 Trailer was filled with "heavy construction tools and equipment, power tools, . . . building records." Leone identified an inventory of items in the trailers that he had prepared when he loaded them in 2007. He had not removed any items since then. He had added a few items to the trailers over the years and had updated the inventory list to reflect that. The inventory was admitted into evidence ("T-44 Inventory").

Leone had not been to the Property for at least a year, possibly two or more years. He had not received any notice that a foreclosure proceeding was commenced. He had continued to pay rent to the Tices every month since 2007 until he learned of the change in ownership.

On March 12, 2014, Leone received a phone call from J. Tice advising that the Property had "changed hands." Leone immediately called Gills, told him that two trailers on the Property belonged to Triangle, and asked about getting them back. Gills responded that the trailers and their contents had been "abandoned per the sheriff" and that he (Gills) had "disposed of it." Leone informed Gills that he had asked his employee to drive by the Property that morning and that his employee had observed Triangle's trailers on the Property and also had observed someone "taking stuff out of the large trailer." Gills asked Leone what was in the trailers. Leone described the items that were contained in the trailers, which included "rough-sawn black walnut." Gills replied, "oh, is that what that wood was?" Leone explained that black walnut is very expensive and that he wanted it back. Gills reiterated that the trailers and their contents were "abandoned property" that "belong[ed] to [him] now."

Leone flew back to Maryland from Florida and, on March 22, 2014, went to the Property. He was able to enter the Property and he observed both of his trailers, as well as some of the trailers owned by TECO.[5] He took photographs and a video of the trailers, some of which were introduced into evidence. The trailers were open and their contents had been disturbed. Leone noticed that some of the tools that had been stored inside the T-44 Trailer were now inside the TECO trailers.

More recently, Leone had driven by the Property and seen that Gills had modified the Williams Trailer, "incorporat[ing it] into some kind of structure on the [P]roperty as part of the seafood market." A sign for Gills's business was attached to the Williams trailer.

Gills testified that when he purchased the Property, it looked like a "junk yard." There were "[l]ogs, piles of debris, brush, tires" all over. He began cleaning it up, but did not remove any items "that [weren't] [his]." Beginning a few weeks after the foreclosure sale, he called J. Tice "at least six or seven times" to try to make arrangements for the TECO trailers and other property to be removed. J. Tice said he would "talk with his son and . . . get back to [Gills]," but never followed through. J. Tice's girlfriend arranged to have a truck body that belonged to her towed from the Property.

After the LLC took possession of the Property, Gills wrote the February 10, 2014 letter. He left the Property unlocked during the 10-day period. He had several "amiable" conversations with D. Tice during that period and saw him on the Property multiple times

---

[5] Leone entered the Property surreptitiously without Gills's permission.

-8-

loading items into a van and otherwise removing TECO's property. At the expiration of the 10-day period, Gills let D. Tice remove a loaded van and the skid steer, but otherwise excluded him from the Property. Gills believed that the TECO property was considered abandoned as of that date.

Thereafter, Gills began "remov[ing] everything that wasn't nailed down[,] . . . pil[ing] it all up into dumpsters and [having] the scrap people come and take it away." He had contracted with Schultz & Son, a local scrap metal company, for that purpose. He scrapped at least four trailers and a lot of other "junk" that was inside the trailers.

According to Gills, when he was served in the two replevin actions in June 2014, the only items belonging to Triangle or TECO left on the Property were the Williams Trailer, which Gills had converted to use for his business; the T-44 trailer; a sea container; a 28-foot trailer; wooden poles; and some other items that had been stored inside the trailers. Gills spent more than $1,100 improving the Williams Trailer by adding a floor, a ceiling, and walls; wiring it for electricity; installing a light fixture; and painting it. He raised the trailer up on cinder blocks next to the loading dock on the Property.

On cross-examination, Gills testified that he could not recall how much he had been paid by the scrapyard for the items he removed from the Property, but it was more than $1,000. He was paid by weight, after certain deductions for transportation costs and disposal of items that could not be scrapped.

At the conclusion of the hearing, the court held the matter *sub curia* and directed the parties to return on October 17, 2014, for it to issue its ruling. A week before that

happened, however, TECO and Triangle filed a motion to admit additional evidence, attaching an affidavit by D. Tice. He averred that following the September 26, 2014 trial, he drove to 101 Drummer Drive in Grasonville, a property owned by Gills, and saw a Case Model 580 forklift parked there. He checked the serial number on the identification plate and determined that it was the forklift owned by TECO that was included in the inventory list entered into evidence at trial. In his testimony, Gills had not identified the forklift as an item of property remaining in his possession.

The District Court granted the motion to reopen and, on October 17, 2014, held an evidentiary hearing. D. Tice testified consistent with his affidavit. He stated that the forklift had been present at the Property between February 10, 2014, and February 20, 2014. When asked why he did not remove the forklift during that 10-day period, he responded that its battery was dead.

Gills testified that he had had the forklift towed from the Property to a repair shop sometime after February 20, 2014. He replaced the transmission, engine, tires, hydraulic system, carburetor, fuel tank, fuel valves, condenser wires, and spark plugs. He had not mentioned the fork lift in his prior testimony because "it's not a trailer." He maintained that his testimony about the items that were present on his Property when the replevin actions were filed otherwise was accurate.

On cross-examination, Gills was asked about the items presently stored in the trailers that remained on the Property. Gills recalled seeing "screws and washers and bolts and junk," some "hand tools and shovels," a "lot of hoses," two ladders, and "some

-10-

cords." He also had seen the "wood" Leone had testified about, apparently referring to the black walnut. Everything else had been scrapped or taken to the dump.

TECO and Triangle also introduced into evidence a Schultz & Son record showing four payouts for scrap to Gills totaling $14,368. The first payout was made on March 25, 2014, in the amount of $5,351.60 for 54,820 pounds of metal. That ticket reflected deductions for disposal of ten truck tires and other trash. The second payout was made on April 29, 2014, in the amount of $6,916.40 for 59,880 pounds of metal. That ticket reflected deductions for disposal of more than 50 truck tires and 2 passenger tires, as well as trash disposal. The last two payouts were made on June 9 and 10, 2014, totaling $2,100 for 9,600 pounds of metal.

At the conclusion of the hearing, the parties submitted post-trial memoranda. The appellants argued that Triangle and TECO abandoned their property when they left it on the Property and did not return to reclaim it in the months following the foreclosure sale and thereafter. They argued, moreover, that an action for replevin only may be brought against a party in possession of the personal property and that the evidence showed that at the time the suit was initiated, the only personal property in the possession of Gills and the LLC were three trailers and some items inside them. On this basis, Gills and the LLC asked the court to grant judgment in their favor as to the remaining personal property claimed by TECO and Triangle. Gills and the LLC asserted, moreover, that if Triangle and TECO were entitled to replevy the trailers, then they (Gills and the LLC) were entitled to a lien on those items for the costs incurred in storing them on the Property.

-11-

Finally, Gills argued that he had no personal liability for any actions taken on behalf of the LLC.

Triangle and TECO argued that there was no evidence that they ever had manifested an affirmative intention to abandon their personal property at the Property. On the contrary, the evidence showed that the Tices were actively trying to remove TECO's property when Gills barred them from the Property and Leone was paying rent to store his property until he learned of the foreclosure sale, at which time he immediately contacted Gills to arrange for the return of his trailers.

On November 13, 2014, the court reconvened and announced its ruling, documented in a Memorandum Opinion and Order filed that same day. The court credited Gills's testimony that he contacted the Tices after the foreclosure sale took place and asked them to remove TECO's personal property, but they did not do so. At that time, Gills was the equitable owner of the Property, but did not yet hold legal title, and therefore did not have authority to order the Tices (or Leone) to remove their property. The court credited D. Tice's testimony that he (and his father) did not take steps to remove their property right after the foreclosure sale because they understood that "the process wasn't over" and that they were not yet obligated to do so. Their decision to wait until legal title passed to the LLC indicated "procrastination," not abandonment, in the court's view. In any event, the Tices' response to the February 10, 2014 letter clearly evinced an intent "*not* to abandon [their] property" because they came to the Property to haul some of it away and asked to be allowed to return after the expiration of the 10-day period. (Emphasis in original.)

With respect to Triangle, the court found "no basis" to conclude that it had abandoned its personal property. It credited Leone's testimony that as soon as he learned of the foreclosure, in March 2014, he contacted Gills and "demanded return of his property."

The court then turned to the "most difficult issues . . . [of] what particular property is at issue for purposes of the replevin action and what degree of proof is required to prove its possession by [Gills and the LLC] at the time of the commencement of the action." Gills had acknowledged that the two Triangle-owned trailers and one TECO-owned trailer remained on the Property, along with the sea container, wooden poles, black walnut wood, and miscellaneous tools and hardware. The Case forklift also was at Gills's property on Drummer Drive. With respect to that property, the Court found that Gills and the LLC were "unlawfully detain[ing it] and that TECO [was] entitled to its return."

Turning to the personal property that Gills and the LLC did not admit they still possessed, the court found that D. Tice and Leone's testimony established possession of that property as of February 20, 2014 (with respect to TECO) and March 22, 2014 (with respect to Triangle). The court reasoned that the general rule is that "'possession of personal property . . . proved to exist at some time prior to the commencement of an action to recover such property, is presumed to continue until the contrary is established,'" and found that the appellants had not presented credible evidence to rebut that presumption. (Quoting *Sufficiency of proof in replevin of defendant's possession at time of commencement of action*, 2 A.L.J. 2d 1043).

The court issued a writ of replevin in favor of TECO for the forklift; seven trailers; a trailer dolly; a sea container; "several wood poles"; three boring and piercing tools; and a pump. The court issued a writ of replevin in favor of Triangle for the Williams Trailer; the T-44 Trailer; the black walnut wood; and "all items listed on [the T-44 Inventory]."[6] Triangle and TECO each were required to post a bond of $5,000.

On August 13, 2015, the Queen Anne's County Sheriff executed the writs of replevin.[7] The sheriff completed a "Schedule of Goods Replevied" for each appellee. As to TECO, the items listed as replevied on the schedule were a 1968 Fruehauf box trailer; a trailer dolly; a sea container; and "several wood poles." Inside the box trailer were miscellaneous tools and materials that Gills had advised the sheriff were "all junk." As to Triangle, the items listed as replevied were the Williams Trailer; black walnut lumber;

---

[6] That list comprised more than seventy-five tools and items of heavy equipment.

[7] The nine-month delay between the grant of the writs and the execution of the writs was occasioned by interlocutory appeals filed by Gills and the LLC. They noted appeals from the District Court's memorandum opinion and order in each case. TECO and Triangle moved to strike the appeals, arguing that the District Court's decision was not a final, appealable judgment because a replevin action is in the nature of a preliminary probable cause determination and that an appeal only may be taken from a final determination in detinue that TECO and Triangle are entitled to possession of the property (and awarding damages, if proved). The District Court agreed and struck the appeals. Thereafter, Gills and the LLC noted appeals from the grant of the motions to strike. In those appeals, the circuit court determined that the orders granting the motions to strike were appealable, but the District Court had not erred by striking the appeals as having been taken from non-final judgments. The circuit court thus remanded the case to the District Court for further proceedings. These rulings are not at issue in the instant appeal and we make no comment about them.

-14-

and twenty miscellaneous tools and items of construction equipment.[8]  The sheriff noted that all of these items were clearly marked with Triangle's name and logo.  Seven similarly marked items that were not listed on Triangle's inventory also were located but were not replevied.

## B. **Circuit Court Proceedings on Detinue Action**

In November 2015, the cases were transferred to the circuit court for a merits trial because the value of the property at issue exceeded the monetary jurisdiction of the District Court.  The circuit court bifurcated the claims by TECO and Triangle for trial.

TECO's claims were tried on February 2, 2016.  In its case, TECO called D. Tice and Amber Schultz, a former office assistant at Schultz & Son.  In addition to reiterating his prior testimony, D. Tice testified that six trailers, two piercing tools, a pump, and a trencher belonging to TECO "remain[ed] unrecovered."  When asked whether he knew why those items were no longer at the Property, he replied, "[t]hey were taken to the scrap yard."

Amber Schultz testified that she worked as an office assistant at Schultz & Son, a full service scrap yard, for eight and a half years, including during all of 2014.  She was in charge of invoices and statements.  She was asked about the metal scrapped by Gills in 2014, as evidenced on the Schultz & Son payment ticket.  She testified that the March 25, 2014 transaction reflected that Gills had scrapped two steel trailers and one aluminum

---

[8] As we shall discuss, *infra*, the T-44 Trailer was not listed on the schedule of replevied items, but it was recovered.  The Williams Trailer was listed, but was not recovered.

trailer. The ticket reflected a $310 deduction for trash, which Schultz explained meant that the scrapyard had hauled to the landfill "material inside of the trailers," such as wood and debris. The April 29, 2014 ticket reflected that Gills had scrapped five more trailers. That ticket also reflected a trash deduction. The June 2014 transactions were for roll-off containers that Schultz & Son provided to Gills to fill and return. As mentioned earlier, the scrap payments made to Gills totaled $14,368.

Gills testified that he contacted Schultz & Son within days after February 20, 2014, and arranged for all but one of the TECO trailers to be hauled off the Property and scrapped. He said that the March and April 2014 payment tickets reflected the scrap value of all those items (as well as some of his own personal property). The June 2014 transactions were unrelated to the TECO property.

At the close of the evidence, counsel for TECO argued that because the trailers and the personal property inside them belonged to TECO and TECO had not abandoned that property, Gills had "unlawfully converted it" when he claimed it to be his own and had it scrapped. He asked the court to enter a money judgment in favor of TECO in the amount of the Schultz & Son payment tickets.

Counsel for Gills and the LLC responded that this was a "clear case of abandonment" in light of the five month period between the foreclosure sale and the date when the Tices were prohibited from entering the Property to retrieve any more personal property. He pointed out that the evidence showed the TECO property that had not been replevied all had been scrapped by April 29, 2014, "long before suit was filed in this matter." He argued that if the court were to find that the property was not abandoned and

-16-

that an action for replevin could be maintained, any award of damages should be limited to the scrap value of the trailers reflected on the March and April 2014 payment tickets from Schultz & Son, not the June 2014 tickets, and that any judgment should be entered against the LLC, not Gills personally.

Triangle's claim was tried on March 15, 2016. In its case, Triangle called Leone and Eston E. Hoffman, an auctioneer and personal property appraiser. Leone testified that the T-44 Inventory was prepared by two of his employees in around 2010, when he temporarily was "winding . . . down" Triangle's "heavy construction business" in favor of "more residential and light commercial" business. Leone stored the tools and equipment in the T-44 Trailer, rather than selling them, because he anticipated restarting his company's heavy construction business and he would need to "have th[o]se tools available for our use at that time." All of Triangle's tools and equipment were painted orange and were stenciled with the company name. They were stored in a "very orderly and organized fashion," with tools in their boxes and on shelving within the trailer.

Leone further testified that on August 13, 2015, when the writ of replevin was executed, he recovered the T-44 Trailer, but not the Williams Trailer. He explained that the Williams Trailer could not be towed off the Property because it was four-feet off the ground on cinder blocks and no longer had wheels attached. There were tools and equipment inside the T-44 Trailer when it was replevied, but much of Triangle's personal property was missing. The tools and equipment that were present all were in a "big heap in the middle of the trailer." After he reclaimed the T-44 Trailer, Leone inventoried the

items within it and then hired Hoffman to give him an appraisal of the "equipment that wasn't there."

Hoffman was accepted by the court as an expert in the field of appraisal and auctioneer services. He testified that he had appraised property for Leone around 2010/2011, including the inventory of the T-44 Trailer. At that time, Leone had sold some of his heavy construction tools and equipment. The appraised value assigned by Mr. Hoffman was significantly lower than the price the items ultimately sold for at auction.

In 2015, Leone asked Hoffman to assign a value to the missing tools and equipment. Hoffman determined a "replacement value," as opposed to a market value, for the tools and equipment that had been stored in the T-44 Trailer but were no longer in the trailer when the writ of replevin was executed. He explained that he used that method because the "tools [would] have to be replaced [if] Mr. Leone . . . wanted to go into business tomorrow." He opined that that method produced a replacement value of $59,119 for the tools. Hoffman's report detailing how he arrived at that figure was introduced into evidence. We shall discuss it in more detail, *infra*.

In his case, Gills testified, recalled Leone, and called two witnesses: his wife and bookkeeper for the LLC, Donna Gills ("Donna"); and Edward Nelson, an auctioneer. Gills testified that he disposed of TECO's property after February 20, 2014, but did not dispose of any of Triangle's property. He claimed that everything stored in the T-44 trailer when he took title to the Property remained there until the writ of replevin was

-18-

executed. Photographs of the inside of the T-44 trailer that he took at some point after the replevin action was filed were introduced into evidence.

By stipulation, Nelson was accepted as an expert in the fields of appraisal and auctioneering services. He explained the difference between the "replacement value" and "market value" methods of valuation. In the former method, the appraiser assigns "a dollar amount . . . to go out somewhere and [buy the item]." In the latter method, the appraiser determines how much the item in its current condition would sell for at auction. Nelson reviewed the photographs of the tools taken by Gills and, using the market value method, determined that the total value of the tools that had been stored in the T-44 Trailer, but were not replevied, was $3,695.

Donna testified that she was present when her husband opened the T-44 Trailer. She saw that the contents of the trailer were "rusty" with a "thick layer of dust." She did not believe that any of the contents were removed from the Property before the writ of replevin was executed.

At the conclusion of the evidence, counsel for Triangle argued that the court should find that all the items listed in Triangle's inventory were present on the Property when the action was commenced and to award damages for the value of the items not replevied based upon the the valuation opinion offered by Hoffman.

Counsel for Gills and the LLC argued that the Williams Trailer and the black walnut wood were not at issue because both were listed as having been replevied by the sheriff. He further argued that the court should credit Gills's testimony that the items that were replevied were all the items stored in the T-44 Trailer. He argued that if the court

were inclined to grant a monetary judgment, it should be entered against the LLC only, not against Gills, and it should be for an amount based upon Nelson's valuation opinion. He argued that a market value valuation was more appropriate in this case because Leone had testified that he began storing his equipment at the Property because he no longer was engaging in heavy general contracting work.

On June 5, 2016, the court entered memorandum opinions and orders on the bifurcated claims. In TECO's case, it adopted the "rationale and reasoning" of the District Court in rejecting the abandonment defense. It found that "even a cursory analysis of the facts shows that [TECO] did not intend to walk away from their property, and [was] taking multiple active steps to recover it in what Gills admits were three attempts during the unilaterally imposed 10 day window."

The court credited Gills's testimony that he had had all but one of TECO's trailers hauled away to be scrapped and the contents otherwise disposed of within days after he barred the Tices from the Property. On that basis it found that the Schultz & Son payment tickets from March and April 2014 reflected the scrap value of the trailers and that the June 2014 payment ticket was unrelated to TECO's property.

The court entered judgment of possession in favor of TECO for four items replevied on August 13, 2015. From the scrap tickets, it found that seven trailers were scrapped in March and April 2014.[9] The writs of replevin sought the return of nine trailers—seven belonging to TECO and two belonging to Triangle—and two trailers were

_____

[9] In fact, Schultz had testified that eight trailers were scrapped.

-20-

replevied—one belonging to TECO and one belonging to Triangle. Thus, the court reasoned that six of the scrapped trailers belonged to TECO. Because it could not determine from the scrap tickets which trailers were TECO's and because TECO had not adduced any other valuation evidence, the court entered judgment in favor of TECO for the six trailers with the lowest scrap value, for a total of $9,856.40. The court entered judgment against the LLC *and* Gills, jointly and severally, because the Schultz & Son payment tickets showed payment had been made to Gills, individually, not to the LLC. The court also noted the lack of any evidence that Gills had been acting in a representative capacity when he sold the trailers for scrap. The court entered judgment of possession in favor of TECO for the "non-replevied property [that] . . . cannot be valued," consisting of the forklift, the piercing and boring tools, the pump, and the trencher.

In Triangle's case, the court credited Leone's testimony about the tools and equipment stored in the T-44 Trailer and his actions upon learning that the LLC had taken title to the Property. The court found Gills not to be credible. It noted that Gills had changed his testimony between the District Court and circuit court proceedings with respect to whether he had disposed of any personal property stored in the T-44 trailer. It found that Gills had hoped to "gain a windfall at the expense of others" by selling and repurposing Triangle's (and TECO's) property.

The court ruled that Triangle had proved that the property identified on the writ of replevin all belonged to it and all had been present at the Property in March 2014. The

court entered a judgment of possession in favor of Triangle with respect to the replevied property.

The court then turned to damages relative to the personal property that was not replevied, which the court found to include the black walnut wood and the Williams Trailer. The court found both valuation experts to be credible, noting that they reached "wildly different valuations" simply because each used a different approach to valuation. The court determined that the evidence supported the award of the replacement value of the personal property, as opined by Hoffman, rather than the market value, as opined by Nelson. We shall discuss this ruling in greater detail below. The court entered a judgment in detinue in favor of Triangle and against the LLC for $59,119.

These timely appeals followed.

**DISCUSSION**

**I.**

Gills and the LLC contend the circuit court erred as a matter of law by ruling that TECO and Triangle had not abandoned their personal property on the Property. They maintain that the evidence showed that Triangle's property was left "unattended from September 17, 2013 through June 2, 2014, when Triangle filed suit" and that TECO's property was left unattended through June 26, 2014, when it filed suit. This argument is without merit.

In *Nickens v. Mount Vernon Realty Group, LLC*, 429 Md. 53 (2012), the Court of Appeals considered, in pertinent part, whether a foreclosure purchaser unlawfully converted the personal property of an occupant of the foreclosed upon property when it

-22-

disposed of that property after employing peaceable self-help to take possession of the property. The Court held that while the foreclosure purchaser had the right to use self-help to enter and take possession of the real property and to exclude others from entering, the purchaser only could dispose of the personal property if it had been abandoned by the former occupant. "[A]bandonment entails the relinquishment of any interest to the property" and may be shown by evidence that the "owner has 'walk[ed] off and [left] [the property] with no intention to again claim it or exercise rights of ownership over it.'" *Id.* at 77-78 (quoting *Steinbraker v. Crouse*, 169 Md. 453, 457-58 (1936)).

In the case at bar, the circuit court adopted the non-clearly erroneous findings made by the District Court that neither TECO nor Triangle had abandoned their property. These findings are amply supported by the record, which shows that the Tices, upon receiving the February 10, 2014 letter, made immediate and repeated efforts to recover their personal property, continuing until they were excluded from the Property by Gills on February 21, 2014; and that Leone demanded the return of his personal property the same day he received notice that the Property had been foreclosed upon. This evidence plainly showed an affirmative intent on the parts of TECO and Triangle *not* to relinquish their interest in their tools, trailers, equipment, and other items of personal property stored at the Property and supported the circuit court's determination that that property had not been abandoned.

## II.

Gills and the LLC contend the circuit court erred by awarding damages to TECO and Triangle for personal property that was not replevied because it was not in their

(Gills's and the LLC's) possession on the dates the replevin actions were filed. TECO and Triangle respond that, having met their burden with respect to the element of possession at the replevin stage of the proceedings, they were not obligated to prove the element of possession at the detinue stage. For the reasons to follow, we agree with Gills and the LLC that possession in the defendant ordinarily is a required element of an action for detinue; however, under a well-established exception to that rule, TECO and Triangle were entitled to a judgment for the value of their personal property even if it had been destroyed prior to the commencement of suit.

**a.**

"In a replevin action, a party seeks . . . to recover specific goods and chattels to which he or she asserts an entitlement to possession." *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486 (2014). At common law, an action for replevin could be commenced by filing a bond with the clerk of the court in double the value of the personal property claimed to be unlawfully detained by the defendant. *Wallander v. Barnes*, 341 Md. 553, 561 (1996). Upon the approval of the bond, the clerk would issue a writ directing the sheriff to seize the goods and place them in the plaintiff's possession. *Id.*

The common law writ encompassed two alternative remedies. If the goods or chattels could be seized and returned to the plaintiff, the action would proceed in the *detinuit*, alleging that the defendant was unjustly detaining the property. *Id.* at 562. In that action, once the plaintiff proved his entitlement to possession, he could obtain a final judgment of possession and recover damages occasioned by the unjust detention of the property. *Benesch v. Weil*, 69 Md. 276, 279 (1888). If "the goods and chattels [were]

eloigned,[10] or otherwise withheld from the execution of the writ by the act of the defendant," however, the action could proceed in the *detinet*. *Id*.[11] In that action, the plaintiff could be awarded the full value of the goods or chattel as damages. *Id*. In some cases, a plaintiff could be entitled to both remedies, as they related to different items of property.

Until 1973, pre-hearing seizures of goods pursuant to a writ of replevin were permitted in Maryland. In the wake of the Supreme Court's decision in *Fuentes v. Shevin*, 407 U.S. 67 (1972), holding that prehearing seizures of property violated due process, the Court of Appeals adopted amended rules that "provide[d] a judicial hearing early in the procedure, so that the writ of replevin could issue as expeditiously as constitutionally and practically possible." *Wallander*, 341 Md. at 568. The amended rules abolished the *detinet*/*detinuit* distinction within replevin. All actions for replevin were now the equivalent of an action in the *detinuit* in that they were commenced by the filing of a "statement of claim . . . alleg[ing] that the defendant unjustly detain**s** the property," seeking the return of the property, and, in certain cases, seeking damages for the detention. *Id.* at 569 (quoting M.D.R. BQ42) (emphasis added). Exclusive jurisdiction over replevin was vested in the District Court. That court was required to hold a pre-

___

[10] Eloign is "[t]o remove (a person or property) from a court's or sheriff's jurisdiction [or] [t]o remove to a distance; conceal." *Black's Law Dictionary*, 559 (10th ed. 2014).

[11] The plaintiff also could elect to file a declaration when he or she posted bond. Such a declaration necessarily would be in the *detinuit* because, at that time, the goods were alleged to be detained by the defendant. If the writ was successfully executed, the plaintiff would amend the declaration to proceed in the *detinet*.

seizure hearing on a show cause order and grant the writ if the plaintiff made a showing of a "reasonable probability" that he or she was entitled to the return of the property. If the writ were denied, the action would "proceed in detinue." *Id.* at 568–69 (quoting M.D.R. BQ44).

As the *Wallander* Court explained, in light of these changes:

Modern replevin in Maryland is a pre-judgment, but post-probable cause determination, seizure. If probable cause is not established, so that replevin is denied, the action is no longer replevin, it is detinue. If probable cause is established and the writ issues, but the property cannot be seized before trial on the merits, the action is no longer replevin. Under those circumstances, if the plaintiff still desires at least the option of obtaining return of property, the value of which is in the monetary jurisdiction of the District Court, after a District Court judgment on the merits, the plaintiff properly should amend to detinue. If successful on the merits, the plaintiff may then recover the property by a District Court judgment for return of the property.

Where (1) probable cause is not established or, if established, the property cannot be seized before trial, (2) the value of the property exceeds the monetary jurisdiction of the District Court, (3) the plaintiff has not demanded a jury trial, and (4) the plaintiff desires a judgment for the goods or for their value, the plaintiff's recourse is to dismiss, voluntarily and without prejudice, and to commence a new action in the circuit court.

*Id*. at 572.

Shortly after the decision in *Wallander*, in 1996, the Court of Appeals again amended the rules governing replevin and detinue, to their current form, permitting transfer to the circuit court without the need for a plaintiff to dismiss and refile. Rule 12-601, titled "Possession of Personal Property Before Judgment – Replevin," provides that a party "claiming the right to immediate possession of personal property may file an action . . . for possession before judgment . . . . in the District Court." *Id*. at (a). The

action must be prosecuted against "the person who has possession of the property *at the time the complaint is filed*" and if possession changes during the pendency of the action, the person who "obtains possession . . . shall be joined as a defendant." *Id*. at (b) (emphasis added). The complaint shall describe the property and its value; allege that the defendant "unjustly detains the property"; state a claim for the return of the property; and state "any claim for damages to the property or for its detention." *Id*. at (c). The District Court shall hold a hearing not less than seven days after notice to the defendant and, if the court determines that the plaintiff is entitled to possession before judgment, "shall order issuance of a writ directing the sheriff to place the plaintiff in possession of the property[.]" *Id*. at (g). The order also shall prescribe the amount of a bond to be paid by the plaintiff to secure the property pending a trial on the merits. If the writ is returned unexecuted because "the claimed property cannot be found," the plaintiff may request reissuance of the writ or may proceed on an action for detinue, pursuant to Rule 12-602. *Id*.

Rule 12-602, titled "Recovery of Property or Value After Judgment – Detinue," permits a plaintiff to bring an action for the recovery of personal property in the circuit court or the District Court. *Id*. at (a). Like an action for replevin, a detinue action must be brought against the party "who has possession of the property *at the time the complaint is filed*." *Id*. at (b) (emphasis added). If the plaintiff already has instituted a replevin action pursuant to Rule 12-601, however, that action automatically will convert to one for detinue after the show cause hearing; and "[i]f the value of the property remains at issue and that value and any damages claimed exceed the monetary jurisdiction of the District

-27-

Court," or if a jury trial is prayed, the action will be transferred to the circuit court. Md. Rule 12-601(h).

When the plaintiff prevails at a merits trial on an action for detinue, the court "shall award possession of the property or, in the alternative, payment of its value." Md. Rule 12-602(d)(1). The court also may award damages caused by the unlawful detention of the property or for damage to the property during the detention. *Id*. A judgment in detinue "shall separately specify the value of the property and damages." Md. Code (1973, 2013 Repl. Vol.), section 11-104(a) of the Courts & Judicial Proceedings Article. If judgment is entered for the defendant and the plaintiff already had been put in possession of the property before judgment, by replevy, the court shall order the property returned to the defendant and the defendant may move for damages within 15 days of the judgment. *Id*. at (d)(2).

**b**.

In the case at bar, Triangle filed its action for replevin on June 2, 2014, pursuant to Rule 12-601, seeking the return of the Williams Trailer, the T-44 Trailer, and "approximately ninety (90) items or pieces of construction equipment" stored inside the trailers. TECO filed its action on June 26, 2014, seeking the return of the seven trailers and "approximately 200 items of personal property" stored inside them.

At the September 26, 2014 show cause hearing in District Court, Gills testified that the only property belonging to TECO or Triangle that remained at the Property was the Williams Trailer, which Gills had converted to use for his business; the T-44 Trailer; a sea container; a 28-foot trailer; wooden poles; and some other items that had been

-28-

stored inside the trailers. He asserted that soon after February 20, 2014, he had begun "remov[ing] everything that wasn't nailed down[,] . . . pil[ing] it all up into dumpsters and [having] the scrap people come and take it away." The Schultz & Son payment tickets were not introduced into evidence, however, so the time period in which these items were scrapped or otherwise disposed of was not clear.

At the October 17, 2014 reopened show cause hearing in the District Court, Gills acknowledged that he still had possession of the TECO forklift. He also clarified that there were "screws and washers and bolts and junk," some "hand tools and shovels," a "lot of hoses," two ladders, and "some cords" inside the trailers that remained on the Property. He also had seen the "wood" Leone had testified about, apparently referring to the black walnut. He claimed that everything else had been scrapped or taken to the dump. The Schultz & Son payment tickets were introduced into evidence at that hearing, but there was no testimony adduced to show which items were covered by the payment tickets for March, April, and June 2014.

The District Court, in ruling that TECO and Triangle each had met its burden of proof at the pre-judgment stage, reasoned that although Gills and the LLC had denied being in possession of much of the claimed property when the actions were filed, they had not produced credible evidence to rebut the presumption that "possession of personal property . . . proved to exist at some time prior to the commencement of an action to recover such property . . . continue[s]."

In this appeal, Gills and the LLC do not challenge the propriety of the pre-judgment ruling by the District Court. Rather, they maintain that after the replevin

-29-

actions were converted to an action for detinue and transferred to the circuit court, TECO and Triangle were required to prove by a preponderance of the evidence that the personal property that was not replevied (and which Gills did not otherwise acknowledge remained on the Property) had been in the possession of Gills and the LLC when the replevin actions were filed. They assert that TECO and Triangle failed to meet this burden and that the court erred by not entering judgment in their (Gills and the LLC's) favor with respect to that property.

TECO and Triangle respond that they properly stated claims for replevin; were successful at the pre-judgment stage; and thus were entitled to proceed in detinue to seek final judgments for possession or, in the alternative, for damages for the value of any goods that were not recovered. They maintain that Gills and the LLC failed to "establish—at the replevin and detinue hearings—any basis for determining that specific items were disposed prior to litigation."[12]

---

[12] TECO and Triangle also suggest that Gills and the LLC "failed to even raise the argument that the supposed disposition of certain items of personal property should prevent [TECO and Triangle] from recovering the value of the personal property." We disagree. In opening statements at the detinue trial on TECO's claims, counsel for Gills and the LLC explained that "[t]he law is very clear that replevin can only apply to property that was possessed by the defendants on the date and time that the suit was filed" and because the evidence would show that much of the property claimed had been scrapped before June 26, 2014, TECO was not entitled to recover damages for that property. Counsel for TECO reiterated at the close of the evidence that it was clear that TECO's trailers had been scrapped in March and April 2014, before suit was filed.

Similarly, at the trial on Triangle's claims, counsel for Gills and the LLC argued in closing that it was Triangle's burden to show "that on the date that the suit was filed, that this property was in the possession of Mr. Gills" and that the court had heard "credible testimony" that the items replevied were the only items belonging to Triangle in Mr. Gills's possession on June 2, 2014, when Triangle filed suit.

**c**.

We begin with the judgment in favor of TECO for $9,856.40 in damages. The damages comprised the approximate scrap value of the six trailers the court found belonged to TECO and were present on the Property on February 5, 2014, when the LLC took title, and on February 21, 2014, when Gills last permitted D. Tice to enter the Property.

As mentioned, Rule 12-601 states that a replevin action should be brought against the person who has "possession of the property at the time the complaint is filed." This is consistent with the common law rule in actions for replevin that, "in order for the plaintiff to succeed in an action for the recovery of specific personal property, he must prove, as an element of his case, possession in the defendant at the commencement of the action." *Sufficiency of proof in replevin of defendant's possession at time of commencement of action*, 2 A.L.R.2d 1043 (1948). At the pre-judgment replevin stage, this burden is slight, in that a plaintiff may satisfy it with evidence that the defendant was in possession of the claimed property at some point in time before the replevin action was filed. *See Tesar v. Bartels*, 32 N.W.2d 911, 914–15 (Neb. 1948) (holding that the "well-established" rule of evidence, that "when the . . . state of things is one established by proof, the law presumes that the . . . state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question," applies to proof of a defendant's possession of the property in an action for replevin) (quoting 20 Am. Jur., *Evidence*, § 207, p. 205).

The District Court found that TECO's evidence that six trailers (and other items of personal property) were in the possession of Gills and the LLC on the Property as of February 21, 2014, just over four months before TECO filed suit, satisfied its slight burden to show that Gills and the LLC were in possession of that property when suit was filed. At the detinue trial, however, the Schultz & Son payment tickets and Amber Schultz's testimony were in evidence and they plainly rebutted the presumption that Gills and the LLC were in possession of TECO's property when TECO filed the replevin action. The circuit court so found. Thus, the issue before this Court is whether, upon a finding that the defendant parted with possession of the plaintiff's personal property before the commencement of the replevin action, the court nevertheless may award damages in detinue for the value of that property.

Our research has revealed no Maryland case addressing this issue. The leading Maryland case on replevin and detinue is *Wallander, supra*. That case traces the history of the common law writ in Maryland and how it has been transformed by statute and by rule. *Wallander* concerned a Mercedes sedan purchased by the plaintiff (Wallander) from a consignee of the vehicle. The purchase was financed through a transaction by which Wallander was designated as a lessee and the finance company a lessor. The consignor of the vehicle re-possessed it from Wallander because the consignee did not pay him (the consignor). Wallander brought an action for replevin against the consignor and one of his agents. By the time the replevin hearing was held, however, the consignor had transferred the Mercedes to a dealer in another state. At the replevin hearing, Wallander

sought damages, not the return of the Mercedes. The District Court dismissed the action for lack of standing, but its ruling was reversed by the circuit court.

On remand, the District Court held another replevin hearing; ruled that the matter had been converted to one for detinue because a writ of replevin never had issued and, by that time, could not issue because the defendants no longer were in possession of the Mercedes[13]; and determined that Wallander was entitled to damages for the Mercedes, but that his damages were limited because he was a "lessee" of the vehicle when he filed suit, as a result of the financing agreement he had entered into.

Wallander appealed and the case eventually reached the Court of Appeals. The Court held that over a series of amendments to the rules governing replevin and detinue in Maryland, it had abrogated the common law rule that damages for the value of goods were recoverable in replevin. Rather, replevin had become purely a "pre-judgment, but post-probable cause determination, seizure." 341 Md. at 572. If probable cause were not established, a writ would not issue and the action would be converted to detinue for a merits hearing. If probable cause were established and the writ was issued but the property was not recovered before the merits trial, then the plaintiff could amend to detinue and seek return of the property or, in the alternative, a judgment for its value. If

---

[13] During the pendency of the appeal, the defendants had re-acquired the Mercedes and sold it.

the value exceeded the monetary jurisdiction of the District Court, the plaintiff could dismiss and commence a new action in the circuit court.[14]

The Court reasoned that because from the first hearing in the District Court, Wallander was not seeking return of the Mercedes, but *only* its value, he was pursuing trover/conversion, not replevin *or* detinue. In such an action, Wallander could be entitled to the full value of the Mercedes (which would exceed the monetary jurisdiction of the District Court).

In *Wallander*, the defendants were in possession of the claimed property when the replevin suit was filed but were no longer in possession of it by the time of the show cause hearing; *and* Wallander was no longer seeking to recover the property. Here, in contrast, whether Gills and the LLC had possession of the property was a contested issue at the replevin hearing; and TECO was seeking the return of all its personal property at that stage. It was only at the detinue hearing that it became clear that, with the exception of the property that had been replevied (and, as we shall explain, certain wooden poles), all of TECO's property had been destroyed before the replevin action was commenced.

TECO suggests that having met its burden at the replevin stage, it did not need to prove possession in the defendants after the action converted to one in detinue. We disagree. Rules 12-601 and 12-602 both require that the action be brought against the party then in possession of the property. At a show cause hearing in replevin under Rule 12-601, the plaintiff need only establish a reasonable probability that he or she is entitled

---

[14]Again, the Court's *Wallander* decision preceded the rules change that eliminated the need to dismiss and refile.

to possession of the property and, if the plaintiff satisfies that burden, the court shall issue a writ of replevin directing the sheriff to place the plaintiff in possession of the property. The court may proceed "ex parte" if the defendant fails to appear.

After the writ is executed, and the case converts to detinue, the plaintiff must prove by a preponderance of the evidence entitlement to a final judgment of possession; any damages claimed for the detention of the property; and, as to property not recovered, entitlement to damages for the value of that property. Even if the action began as one for replevin, this necessarily requires proof that the property that was not recovered on the writ was in the defendant's possession when the action was commenced. *See* Rule 12-602(b); *Mylander v. Page*, 162 Md. 255, 260 (1932) ("detinue, for the return of goods, like replevin, is maintainable only against one who has the goods in his possession") (citing 1 *Poe*, Pleading & Procedure, § 521); *Friedman v. Friedman*, 971 So.2d 23, 30 (Ala. 2007) (holding that a judgment in detinue could not issue where court credited the defendant's testimony that she was not in possession of the claimed property, as the common law action in detinue "has always included possession of the subject chattel by the defendant as an element").

In a number of old common law cases, however, courts from around the country have held that an action for detinue may be maintained against a defendant who was unjustly in possession of specific property and, with knowledge of the plaintiff's claim to that property, parted with possession before suit was filed. *See Ford v. Caldwell*, 21 S.C.L. (3 Hill) 242, 244–45 (S.C. 1837) ("Detinue will lie against one out [of] possession, where [he] has once had the rightful possession, and has culpably parted with

-35-

it; but where he has been deprived of his possession by the authority of law, or where he has parted with it without any intentional derogation of the title of the true owner, he would not be held liable to this form of action; although he might be, in the latter instance, to actions of a different form."); *Poole v. Adkisson*, 31 Ky. (1 Dana) 110, 119 (Ky. 1833) ("Detinue may be maintained against a defendant who has had possession of the chattel sued for, but has parted with the possession (without being divested of it by authority of law), before the date of the writ."); *Haley v. Rowan*, 13 Tenn. (5 Yer.) 301 (Tenn. 1833) ("action of detinue will lie . . . when the defendant had parted with the possession before demand and suit brought"); *Sinnott v. Feiock*, 59 N.E. 265, 266 (N.Y. 1909) (an action for replevin and detinue will lie "where the defendant has wrongfully parted with possession" prior to commencement of the action); *Cable Co. of Alabama v. Griffitts*, 49 So. 577, 578 (Ala. 1907) ("If the defendant, having had actual possession previous to the demand or suit brought, 'has wrongfully or to elude the plaintiff's action parted with it,' detinue may be maintained against him.") (citation omitted); *but see Haughton v. Newberry*, 69 N.C. 456, 458 (N.C. 1873) ("There was a fatal variance between the allegation and the proof. In face of the fact, that the defendant did not have the possession at the time of the commencement of the action, as a matter of course the plaintiff was not entitled to the judgment demanded by the complaint.").

The logic of the exception to the possession rule is readily apparent. An action for replevin seeks possession of personal property unjustly detained by a defendant and, thus, within the defendant's control. A plaintiff seeking the return of his or her property may have no way of knowing whether the defendant still has possession of it when suit is

filed. A defendant who has disposed of the plaintiff's property with knowledge of the plaintiff's claim, but before suit has been filed, is not dissimilar to a defendant who disposes of the property (or otherwise hides it away), preventing the sheriff from replevying the property during the pendency of the suit. In the latter scenario, the law is clear that the plaintiff may recover the value of the property if the writ is returned eloigned (or partially eloigned). We are persuaded by the reasoning of our sister courts that the same result should follow when the defendant disposed of the property culpably, after the plaintiff made demand for it, but before suit was filed.

In the case at bar, the circuit court found that TECO had a right to possess the six trailers; that Gills knew the trailers belonged to TECO; that D. Tice attempted to remove the trailers from the Property during the 10-day window arbitrarily permitted by Gills, but was unable to complete that task; that at the expiration of the 10-day window, Gills declared, wrongfully, that the property was abandoned and belonged to him; and that within the next two months, Gills caused all six of TECO's trailers to be scrapped and received over $9,000 for the metal. When TECO filed suit against Gills and the LLC, it had no reason to think its trailers and the property stored inside them were not still in the possession of Gills and the LLC. At the replevin trial in the District Court, the evidence was conflicting on that issue. It only was at the detinue trial that the evidence became clear that all six trailers had been scrapped, *i.e.*, destroyed, in March and April 2014, before TECO filed suit but after D. Tice affirmatively asserted TECO's claim to the property. And by then, the property no longer existed; that is, it had not been transferred to someone else, it had been destroyed. On this evidence, the court did not err by ruling

that an action for detinue could be pursued for damages for that property and that TECO was entitled to a judgment for the scrap value of the trailers.

**d**.

We now turn to the judgment in favor of Triangle for the value of the items of personal property listed on the T-44 Inventory that were not replevied. Gills and the LLC assert that Triangle did not meet its burden to prove that the claimed property ever was in their possession, much less that it was in their possession when Triangle filed its action for replevin on June 2, 2014.

The circuit court credited Leone's testimony that he made demand for Triangle's property in early March 2014 and that all of the items of property listed on the T-44 Inventory were present on March 22, 2014, the date he surreptitiously entered the Property and looked inside the trailer. The court rejected Gills's testimony to the contrary as not credible. The court found that Gills disposed of that property or otherwise converted it to his own use (as he admittedly did with the Williams trailer) at some time thereafter. The court did not make any finding as to whether Gills undertook to dispose of or convert Triangle's property before or after June 2, 2014, when Triangle initiated its replevin action. For the reasons already explained, however, because Triangle's personal property wrongfully was eloigned *after* Triangle made demand for its return, in derogation of its right to possession, Triangle was entitled to a judgment in detinue for its value even if it was disposed of prior to suit being commenced.

**III.**

The LLC contends the circuit court erred or abused its discretion by accepting the valuation method used by Hoffman, rather than the method used by Nelson, and by entering judgment in favor of Triangle for the value opined by Hoffman. It maintains that to the extent that the replacement valuation method was appropriate, that method must account for "physical or functional depreciation."

Triangle responds that the court did not abuse its discretion by "balanc[ing] the competing appraisal reports to conclude that Triangle's expert produced a more accurate and credible calculation of damages." It asserts that Hoffman "consulted multiple sources and averaged multiple purchase prices to determine the price that Triangle would have to pay in order to obtain a substantially similar model of each missing item of tangible personal property."

Hoffman's testimony and his appraisal report explain that in 2010 or 2011 he personally had observed all the property Triangle stored in the T-44 trailer, had found it all to be in good condition, and had appraised its value at that time as exceeding $50,000. He opined that because the tools and construction equipment had not been used since then and had been stored in a clean and dry location, there was no reason to believe its value would have declined in the interim. Hoffman valued the property by assessing the "cost to replace [each item of property with an item] of the same or equal value." He chose that valuation method because the tools and equipment all were used by Triangle in its heavy construction business and would need to be replaced were Triangle to be awarded a job. Hoffman attached to his report a lengthy appendix showing the comparably priced items he had located in online marketplaces, such as Ebay.com,

ConstructionEquipmentforless.com, and GlobalIndustrial.com, as well as at local businesses such as Hearne Hardwoods. Some of the items Hoffman had located in those marketplaces were new, but many were in used but working condition. If Hoffman found multiple online listings, he averaged the prices of several comparable items to arrive at the replacement value.

It is well-established that the ordinary "measure of damages for the conversion or destruction of a chattel is the market value of the chattel at the time and place of the conversion or destruction." *Weishaar v. Canestrale*, 241 Md. 676, 684 (1966) (citation omitted). If a plaintiff's loss is "greater than the market value of the chattel at the time of its destruction, an owner should, on principle, be allowed additional items which will adequately compensate him unless some of those claimed items are so speculative as to create danger of injustice to the defendant." *Id*. at 685 (citation omitted).

Here, the court found that the "evidence support[ed] the replacement value opined by Hoffman" for several reasons. Leone had "testified credibly that the items in question were stored and in working order" and that he planned to use the tools and equipment on future jobs. Thus, Leone had "accumulated a specific inventory of working tools on which [Triangle] could rely at a moment's notice should they be required" and the "only way in which Triangle could accumulate the same tools in any reasonable time period [would be to] find the tools where they are advertised and purchase them." To require Leone to "traipse" all over the state "attending various auctions in hopes that identical used tools could be identified and purchased" would be an unrealistic burden and would impose substantial additional costs on Triangle. In light of these findings, the court found

that to the extent that the replacement value of the items of property exceeded their market value, the excess was a necessary component of Triangle's damages justified by the unique facts of this case. We perceive no error or abuse of discretion by the circuit court in so finding.

<h1 style="text-align:center">IV.</h1>

Gills and the LLC contend the circuit court erred by entering a judgment of possession with respect to one item of property owned by TECO (wood poles) and listed as replevied by the sheriff, and by entering judgments for damages with respect to two items of property owned by Triangle and listed as replevied by the sheriff: the Williams Trailer and the black walnut wood. We shall address each item in turn.

### a. Wooden poles

D. Tice testified at the detinue trial that he did not recover the wooden poles that are identified on the sheriff's return as replevied. Gills and the LLC concede that the wooden poles remained on the Property after the sheriff executed the writ. The circuit court ruled that TECO was entitled to a final judgment of possession for the wooden poles. It did not award any damages for the poles, however, because TECO did not present any evidence bearing on their value or claim damages caused by their detention. There was no dispute that the wooden poles were TECO's property and that they remained in the possession of Gills and the LLC. For that reason, the court did not err by entering judgment of possession in TECO's favor for that property.

### b. Williams Trailer

The evidence adduced at the detinue trial showed that while the sheriff's return listed the Williams Trailer as being replevied, it was not. Rather, the T-44 Trailer was replevied. Leone testified that the Williams Trailer could not be moved off the Property because its wheels had been removed and it had been converted into an office for the LLC's business. In light of that evidence, which the court credited, Triangle was entitled to a judgment for the value of the trailer in lieu of a judgment of possession.

### c. Black Walnut Wood

The sheriff's return listed the black walnut wood as having been replevied. Leone testified at the detinue trial that the wood that was replevied was not the black walnut he had stored in the T-44 trailer. He was shown photographs taken by Gills that purportedly depicted the wood stored in that trailer and testified that that wood "certainly [was] not the black walnut," which had been in "much better" condition. Hoffman confirmed that the lumber depicted in the photographs did not appear to be the black walnut wood that he personally had observed and appraised in 2010 or 2011. The circuit court found Leone to be credible, and disbelieved Gills's testimony. Based upon this evidence, the circuit court plainly did not err by finding that the black walnut wood that had been stored in the T-44 trailer was not replevied and awarding Triangle damages for its value.

### V.

Finally, Gills contends the circuit court erred by entering judgment against him personally on TECO's claim. He maintains that the evidence showed that at all times he was acting "for and on behalf of his wholly owned corporate entity." In any event, he asserts that the court erred by entering judgment against both him and the LLC to the

-42-

extent that the court found that he was acting only in his personal capacity when he contracted with Schultz & Son to scrap the trailers.

TECO responds that the circuit court did not clearly err by finding that Gills was acting in his personal capacity, not in his capacity as the sole member of the LLC, when he scrapped the trailers and their contents. It maintains, moreover, that joint and several liability was warranted. We agree.

The Schultz & Son payment ticket identifies the customer as "Edward Gills" and states that all payments were made to him. Amber Schultz testified that Gills contracted with Schultz & Son to scrap the trailers and their contents. This was evidence supporting the court's finding that Gills contracted with the scrapyard in his personal capacity, not as a member of the LLC.

The evidence also showed that the February 10, 2014 letter directing TECO to remove its property within 10 ten days was written by Gills on behalf of the LLC and that Gills was acting on behalf of the LLC when he prohibited the Tices from entering the Property to remove the rest of TECO's property. In light of the evidence that Gills and the LLC engaged in independent acts causing the injury to TECO, the court did not err by imposing joint and several liability.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**